**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RIVER LIGHT V, L.P. and
TORY BURCH LLC,

              Plaintiffs,

v.

OLEM SHOE CORP.,

              Defendant.

C.A. No. 1:20-cv-07088-LGS

**[PROPOSED] ORDER REGARDING**
**PROTOCOL FOR THE DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION**

The Parties jointly submit this Protocol for the Discovery of Electronically Stored
Information (the "ESI Protocol"), and hereby agree that the following shall govern the production
of paper records and electronically stored information ("ESI") by the Parties in the above-
captioned adversary proceeding on or after January 29, 2021 (the "Effective Date"). The ESI
Protocol shall also govern productions made by any third party who is subpoenaed in this action
on or after the Effective Date, unless otherwise agreed to by the issuing Party and the third party.
Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action on or after
the Effective Date.

    A.      **Search Repositories and Custodians**

      1)    Each Party shall identify to the other Party the particular custodians whose files to
               which it wishes to have search terms applied for purposes of receiving responsive
               documents from the other Party. The parties will work with each other to provide

responses in discovery that facilitate the identification of custodians by the other Party.

2)   With respect to any agreed upon custodian, the Parties agree that each Party will search all reasonably accessible repositories that are likely to contain discoverable information responsive to a discovery request and that are in that Party's custody, possession, or control, including custodial data sources (*e.g.*, email accounts, personal files, computers, hard drives, personal network drives, USB drives, collaborative software programs such as DropBox and Google Documents, etc.), non-custodial data sources (*e.g.*, shared drives, servers, etc.), and paper records. Nothing in this ESI Protocol is intended to relieve any Party from its obligations to look for and collect physical or hard copies of documents a particular custodian identified may have in his or her possession.

3)   The Parties are not obligated to search an electronic repository if, after a reasonable investigation, it is determined to not be reasonably likely to contain relevant information. A Party may object to discovery of ESI from sources that the Party identifies as not reasonably accessible because of undue burden or expenses and such objection shall identify the reason for such undue burden or expense (as defined in the Court's Individual Rules, the Local Rules of the Southern District of New York, Fed. R. Civ. P. 26(b)(2)(B), and in Section A.6 below).  On a motion to compel discovery or for a protective order relating to the discovery of ESI, the objecting Party bears the burden of showing that the information is from a source that is not reasonably accessible because of undue burden or expense.

4) The Parties will perform the searches using any software tool or tools that are capable of indexing and searching files and emails, including the contents of the attachments.

5) Nothing in this ESI protocol is intended to relieve any Party from any obligation to supplement responses to document requests in light of discoverable documents identified in that Party's productions or in light of any other information learned during the course of discovery.  Should a Party's document production, or other discovery conducted in the case, reveal other discoverable or otherwise relevant documents that have not been produced, the other Party has a right to discovery of any such additional documents, consistent with each Party's obligations to seasonably supplement discovery under the Rules.

6) Per the Court's Individual Rule for Civil Litigation II.A.1., except with leave of Court for good cause, or agreed otherwise by the Parties, the Parties shall not be required to search for responsive ESI (a) From more than 10 key custodians; (b) that was created more than five years before the filing of the lawsuit, except with respect to requests specifically agreed to otherwise between the parties; (c) From sources that are not reasonably accessible without undue burden or cost; or (d) For more than 160 hours, inclusive of time spent identifying potentially responsive ESI, collecting ESI, searching that ESI, and reviewing that ESI for responsiveness, confidentiality, and for privilege or work produce protection. The producing Party shall be able to demonstrate that the search was effectively designed and efficiently conducted.

B. **Search Terms:**  For all ESI produced on or after the Effective Date, the Parties

3

agree that any Party producing ESI discovery may use search terms to limit the volume of ESI it must review for responsiveness to document requests, subject to the following limitations:

1) Each Party requesting discovery of ESI will generate and deliver no more than 50 reasonable search terms to the other Party. A "search term" as discussed herein can be a single word, a phrase, or a search string with connectors (such as "apple /5 tree" or "apple AND tree"). Absent a Court order otherwise, no Party has an obligation to review for any search terms it believes to be facially unreasonable, unduly burdensome, or otherwise inconsistent with its obligations under the rules. The parties must confer regarding facially unreasonable, unduly burdensome or objectionable search terms to work together to determine how to revise those terms to remedy any objectionable terms. While search terms may be facially unreasonable or burdensome, search terms also may be revealed as unreasonable or burdensome based on the number of document hits obtained after such search terms are conducted across the relevant document custodians' ESI. The Parties agree to work together to resolve search terms that result in unreasonably high hit counts. In any event, the Parties will meet and confer over any disputes relating to the number and scope of the search terms. To the extent the Parties cannot reach agreement regarding search terms, the Parties may take the issue up with the Court. Once the Parties have agreed to search terms to be conducted, the producing Party will review for responsiveness ESI that contain one or more of the relevant search terms. If the producing Party intends to use any additional culling techniques other than search terms (*e.g.*, predictive coding), it will meet and confer with the

requesting Party to discuss the tool, method, and parameters it intends to utilize prior to using that technique.

2) The producing Party will run the search terms in a non-case-sensitive manner. Hyphenation of terms will not affect search results (*e.g.*, a query for "all inclusive index" will return "all-inclusive index" and vice versa). Search terms should be run to identify documents and communications that include search terms as whole words or parts of words, as indicated by an asterisk (*) symbol.

3) Search syntax should be crafted and run using the following Boolean search functions:

| Operator | Use | Example |
|---|---|---|
| And | Results include all keywords linked with AND | apple AND tree |
| Or | Results include either keyword or all of them | apple OR tree |
| ( ) Parentheses | Groups multiple search strings and sets priorities | (apple tree) |
| " " Quotation marks | Searches for exact phrases | "apple tree" |
| * Asterisk | Searches for word variations | apple tree* (will find tree, trees, treetops) |
| /n Forward slash + number | Searches for words that appear within a certain proximity of one another | apple /5 tree |

If the search syntax required by a Party's search tool is different from the search syntax provided, such Party will provide notice of the actual syntax used for the search prior to conducting the search.

4) The fact that any document or ESI is captured by the search query described in this Paragraph does not mean that such document is responsive to any document

request or otherwise relevant to or admissible in this litigation.  The Federal Rules of Civil Procedure, the Local and Individual Rules of the Southern District of New York and this Court, the Parties' document requests and responses thereto, the claims and defenses asserted by the Parties, any agreements reached by the Parties, and Court Orders shall govern the scope of documents to be produced.

5)   It is anticipated that in due course of discovery, additional search terms may be reasonable to request.  After the Parties' first review and production of ESI, a requesting Party may seek a reasonable number of additional reasonable search terms either by agreement or, if agreement cannot be reached, from the Court on the basis of good cause shown.

C.    **Electronically Stored Information.**  For all ESI produced by the Parties on or after the Effective Date, the Parties agree to produce such ESI according to the following specifications:

1)   TIFF Format.  All ESI produced on or after the Effective Date will be produced in TIFF format, except that Excel files shall be produced in native file format in the first instance, with a TIFF image placeholder for native files in the production.[1]  In addition, if documents produced in TIFF are illegible in TIFF format due to the format of the produced document, a party may request a different format, including native, to facilitate receiving the document in a readable format.  All TIFF formatted documents will be single page, Group 4 TIFF at 300 dpi resolution and 8½ x 11-inch page size, except for documents requiring different resolution or

---

[1] Notwithstanding the foregoing, any ESI requiring redaction may be produced in TIFF format.

page size.  To the extent practical, Bates numbers shall be endorsed on the images so that the numbers print.

2) <u>Images</u>.  Each imaged version of an electronic document will be created directly from the original electronic document.  Color documents (*e.g.*, color photographs or graphical representations in color) shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set out above, unless agreed with the opposing Party or ordered by the Court.  If color images are more practical, the files shall be delivered in single page, JPEG format.

3) <u>Image Load Files</u>.  An image load file, in standard Opticon format, showing the Bates number of each page and the appropriate unitization of the documents, will accompany all document images.  The total number of image files referenced in the image load file should match the total number of images in the production delivery.

4) <u>Text Files</u>.  The producing Party will produce an extracted text file, in UTF format where appropriate, for each electronic document.  For documents that do not contain searchable text, OCR text files shall be produced in the same text-searchable format used by the producing Party at no cost to the receiving Party.  Extracted text will not be provided for electronic documents that have been redacted—*e.g.*, for attorney-client privilege—because the extracted text would reveal the redacted information.  Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

5) <u>Metadata</u>.

    a) <u>TIFF Documents</u>.  For ESI to be produced in TIFF format, the following metadata fields associated with each electronic document will be produced, where available:[2]

| **Field** | **Description** | **File Type** |
|---|---|---|
| BegBates | First page of document | All |
| EndBates | Last page of document | All |
| BegAttach | First page of family range | All |
| EndAttach | Last page of family range | All |
| Custodian | Name of custodian | All |
| Subject | Email subject | Emails |
| To | Email recipient | Emails |
| From | Email sender | Emails |
| CC | Email CC | Emails |
| BCC | Email BCC | Emails |
| DateSent | Email date sent | Emails |
| TimeSent | Email time sent | Emails |
| DateReceived | Email date received | Emails |
| TimeReceived | Email time received | Emails |
| FileName | Original file name | Attachments/Files |
| FileExt | File extension | Attachments/Files |
| DateCreated | Date file was created | Attachments/Files |
| TimeCreated | Time file was created | Attachments/Files |
| DateLastMod | Date file was last modified | Attachments/Files |
| TimeLastMod | Time file was last modified | Attachments/Files |
| Title | Title from file properties | Attachments/files |
| Author | File author | Attachments/files |
| MD5 Hash | The MD5 hash value of the native file | All |
| NativeFile | Path to native files as produced | Attachments/files |
| TextFile | Path to text file for the document | |

---

[2] Nothing in this order requires the parties to create metadata or include metadata fields if none exists for a particular document. For example, some documents, such as old documents saved in hard copy, pdf, or other formats may not have such metadata or identifiable custodian available.

b) <u>Native Format Documents</u>.  As set forth above, Excel documents shall be produced in native file format in the first instance, with a TIFF image placeholder for native files in the production.  Documents to be produced in native format will be produced with the following specifications:

i.   A unique document number shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file.

ii.  The native format documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow tracking and authentication of the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value"; (iii) the original name of the file; and (iv) a document control number.

iii. Any file produced in native format need not be imaged.  Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the bates number and confidentiality designation of the corresponding file.

iv.  When producing spreadsheets in other than their native formats (*e.g.*, for redacted documents), the producing Party shall include all hidden rows, columns, cells, worksheets, data, comments, or formulas, as well as any associated headers or footers.

c) <u>Data Load Files</u>.  Fielded data should be exchanged via a document-level-database load file in one of two delimited formats: (a) standard Concordance (DAT) or (b) tab delimited (TXT).

d) <u>Deduplication</u>.  The Parties may dedupe globally (*i.e.*, across all custodians).  A document may be removed as duplicative only if it is identical to another document that is being produced, based on a comparison of MD5 or equivalent hash values.

e) With the exception of image or signature files that are otherwise contained in the parent email, documents will be produced in full families with appropriate metadata.  Privileged documents that are part of large responsive and non-privileged families should be produced with a slip sheet that states "Withheld as Privileged," or with redactions of the privileged material as appropriate.

D.    **Paper Records.**  Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format:

1) <u>TIFFs</u>.  All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11-inch page size, except for documents requiring higher resolution or different page size.  Each image file should have a unique file name which shall be the Bates number of the page.

2) <u>Scanning</u>.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized).

3) <u>Objective Coding Fields</u>.  The following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number;

(3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; and (6) source location/custodian.

4)   <u>OCR Text Files</u>.  Each Party should make its production text-searchable unless that Party does not intend to make its production text-searchable for its own and/or its counsel's use in this litigation and the Party's documents do not already exist in text-searchable format independent of this litigation. OCR text files shall be produced in the same text-searchable format used by the producing Party at no cost to the receiving Party.  The produced text files will not contain any redacted portions of any redacted documents.

E.     Productions shall be produced via secure file transfer such as SFTP or Citrix ShareFile. As an alternative, productions totaling more than 5 gigabytes of data may be encrypted or otherwise password protected and placed on a generally accepted electronic medium, such as a USB thumb drive or external hard drive and delivered to the offices of opposing Party's counsel.

F.     The Parties shall meet and confer in good faith during the course of fact discovery regarding the contents of any privilege log or to address any dispute arising out of this Protocol. Privilege logs shall be served in accordance with the deadline for close of fact discovery. The inadvertent production of privileged or confidential ESI shall be addressed pursuant to the Agreed Motion for Entry of Protective Order (Pending the Court's Approval; Filed ECF No. 31) entered in this matter.

G.      The production of ESI shall not constitute a waiver of attorney-client privilege or work-product protection if the disclosure was inadvertent and the Party making the claim of privilege or protection shall promptly take reasonable steps to recover the ESI.


SO ORDERED.

Dated: February 1, 2021
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

12