UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RIVER LIGHT V, L.P., et al.,                          :
                             Plaintiffs,   :
                                    :            20 Civ. 7088 (LGS)
         -against-                         :
                                    :            **OPINION AND ORDER**
OLEM SHOE CORP.,                                     :
                          Defendant.   :
------------------------------------------------------------ X
LORNA G. SCHOFIELD, District Judge:

       Plaintiffs River Light V, L.P. ("River Light"), the owner of the "TT Logo," is a subsidiary of Plaintiff Tory Burch LLC ("Tory Burch"). In the Third Amended Complaint (the "Complaint"), Plaintiffs assert trademark infringement, trade dress infringement, unfair competition and related claims against Defendant Olem Shoe Corp. ("Olem"), based on the alleged infringement of Plaintiffs' rights in the trade dress of the Tory Burch Miller Sandals and Tory Burch's TT Logo trademark. Defendant answered, asserting affirmative defenses, and filed a counterclaim seeking a declaratory judgment that River Light's trademark registrations for the TT Logo were fraudulent or otherwise invalid.

       Defendant moves for summary judgment on all of Plaintiffs' claims: the federal trade dress, trademark and false designations of origin claims under 15 U.S.C. § 1114 and § 1125(a), and related state law claims. Plaintiffs cross-move for summary judgment on the issue of whether Plaintiffs' trade dress is functional, and on Defendant's fraud counterclaim and affirmative defenses. For the reasons below, Defendant's motion for summary judgment is mostly denied. Plaintiffs' motion for summary judgment is mostly granted.

## I.    BACKGROUND

       The following summary is taken from the parties' Rule 56.1 statements and other submissions on these motions. The facts are either undisputed or based on evidence in the

record.  For Defendant's and Plaintiffs' respective motions, all reasonable inferences are drawn in favor of the non-moving party.

    A.    **Miller Sandals Trade Dress and TT Logo Trademark**

River Light licenses the TT Logo to Tory Burch.  Along with other products that bear the TT Logo, Tory Burch sells thong sandals with three grommet straps folded over to hold a medallion at the center based on the TT Logo (the "Miller Sandal Medallion").  Defendant also produces and sells thong sandals with three grommet straps folded over to hold a decorative medallion at the center (the "Olem Medallion").  Below are the TT Logo, and a side-by-side comparison of the Miller Sandals on the left and the Olem Sandals on the right.



Tory Burch has obtained two U.S. trademark registrations for the TT Logo: the U.S. Reg. No. 3029795 issued on December 13, 2005 (the "'795 Trademark") and the U.S. Reg. No. 3563326 issued on January 20, 2009 (the "'326 Trademark").  The '795 Trademark was filed with the United States Patent and Trademark Office ("USPTO") in September 2003.  The statement of use was submitted on October 6, 2005, and stated that the TT Logo's first use in

commerce was February 1, 2004.  The '326 Trademark was filed with the USPTO on December 6, 2007, on an "actual use" basis for a "full line of clothing and footwear."  The application stated a first use in commerce date of February 1, 2004, as well.

The parties dispute the validity of the statements made in the application for the two trademarks.  Defendant asserts, and Tory Burch denies, that Tory Burch's first storefront was not opened on February 1, 2004, which is a Sunday.  Defendant also asserts that Tory Burch did not have a "full line of clothing and footwear" bearing the TT Logo by December 6, 2007, as described in the application for the '326 Trademark.  Ms. Brigitte Kleine, who was the president of Tory Burch from December 2004 until October 2016, represents that she signed both the '795 Trademark application and the '326 Trademark application after confirming the accuracy of the submissions with Tory Burch's outside legal counsel.

Tory Burch began selling the Miller Sandals in the Spring of 2008.  Since 2009, Tory Burch has generated substantial amounts in sales in the United States and spent substantial amounts in advertising and marketing[1] since 2015.  Tory Burch has sought to protect its trade dress and trademark by, for example, sending cease-and-desist letters to entities that sold and distributed similar products.  Defendant began selling the Olem Sandals in 2017.

**B.     Expert Witnesses**

Both Plaintiffs and Defendant offer numerous expert reports, some of which conclude the following:

---

[1]  Although the amounts are generalized in this opinion, Plaintiffs submitted, and the Court considered, more precise amounts, which are under seal.

Plaintiffs rely on the report of Dr. David Neal who opines that 30 to 51% of actual and likely consumers attributed secondary meaning to Plaintiffs' Miller Sandals. Dr. Neal's opinion is based on three surveys he designed and conducted of 405 female adults.

Plaintiffs also rely on the report of Lenny Holden, a footwear consultant, who opines on the non-functionality of the Miller Sandal trade dress. Mr. Holden concludes that the Tory Burch Miller Sandal is "an iconic sandal" that has been popular since Spring of 2008. He concludes that there are "nearly unlimited ways to design a thong sandal" with "each pattern piece of a sandal" -- the center design, the straps, the instep pieces, the toe posts and the decorative details -- able to be varied. Mr. Holden provides exhibits of alternative design choices for thong sandals.

Plaintiffs proffer Hal Poret who surveyed consumers and determined rates of confusion between the Miller Sandal and the Olem Sandal. Mr. Poret's opinion is based on three separate surveys. First, he showed one group of participants the Olem Sandals and asked what brand they might associate with the sandals. Of the group, 39.3% attributed the Olem Sandals to Tory Burch. Second, he showed different participants sandals like the Olem Sandals but with a markedly different center medallion. Of the group, 20.7% attributed the sandals to Tory Burch. From this, Mr. Poret determined a net confusion rate of 18.6% (39.3% - 20.7%), attributable specifically to the similarities of the center medallion design to the TT Logo. Third, he showed participants a further modified version of the Olem Sandal with a different center medallion and without the folded grommet straps. The overall look is not alleged to infringe the Miller Sandal trade dress or the Olem Sandal trade dress. This time, 14.0% of the group attributed the sandals to Tory Burch. Based on these results, Mr. Poret determined a net confusion rate of 25.3%

(39.3% - 14.0%), attributable specifically to the similarities of the overall trade dress, including the three folded grommet straps.

Defendant relies on its expert, Rhonda Harper, to rebut Dr. Neal's and Mr. Poret's surveys. Ms. Harper attacks the methodology of both surveys, including identifying issues related to sampling in Mr. Poret's survey and whether Dr. Neal's proposed "universe" was too narrow to assess whether the mark has achieved secondary meaning. Defendant also proffers an expert in shoe design, Dennis Comeau. Mr. Comeau's report includes negative quality reviews of Plaintiffs' Miller Sandals from Amazon's storefront.

## II.    LEGAL STANDARD

Summary judgment is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Electra v. 59 Murray Enters.*, 987 F.3d 233, 248 (2d Cir. 2021). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017).

Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor. *Electra*, 987 F.3d at 248. When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration. *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020). When the movant properly supports its motion with evidentiary materials, the

opposing party must establish a genuine issue of fact by citing particular parts of materials in the record.  Fed. R. Civ. P. 56(c)(1)(A).

## III.    DISCUSSION

### A.    Trade Dress Infringement (First Claim for Relief)

Section 43(a) of the Lanham Act protects trade dress.  *See* 15 U.S.C. § 1125(a).  "Trade dress" is a concept that "encompasses the overall design and appearance that make the product identifiable to consumers."  *Nora Beverages, Inc. v. Perrier Grp. Of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001); *see Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 181 (2d Cir. 2021).

Because a distinctive appearance has the same effect as a trademark, it also has the same protections under the Lanham Act as an unregistered mark and proceeds under a parallel analysis.  *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000); *see also Nora Beverages*, 269 F.3d at 119 ("When evaluating [trade dress] claims, courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin." (internal quotation marks omitted) (alteration in original)); *Steven Madden, Ltd. v. Yves Saint Laurent*, No. 18 Civ. 7592, 2019 WL 2023766, at *5 (S.D.N.Y. May 8, 2019).  The Second Circuit exercises "particular caution when extending protection to product designs" because unlike patent and copyright law, trademark and trade dress protection is open-ended and not limited in time.  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) (internal quotation marks omitted); *accord Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 46 (2d Cir. 2018) (summary order).  The infringement analysis is the same in trademark and trade dress cases when the same or analogous concepts are involved.  *Christian Louboutin S.A. v. Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216 n.9 (2d Cir. 2012); *Laurel Rd. Bank v. CommonBond, Inc.*, No. 18 Civ. 7797, 2019 WL

1034188, at *4 n.5 (S.D.N.Y. Mar. 5, 2019).  Accordingly, some of the principles cited below to discuss trade dress infringement derive from cases alleging trademark infringement.

A plaintiff alleging trade dress infringement under the Lanham Act must demonstrate that the design is (1) not functional, (2) inherently distinctive or has acquired secondary meaning in the marketplace and (3) likely to be confused with defendant's allegedly infringing designs.  *See Wal-Mart Stores, Inc.*, 529 U.S. at 210-11; *Nora Beverages, Inc.*, 269 F.3d at 118.

The plaintiff must articulate the specific elements and the scope of the trade dress.  *See Yurman Design, Inc.*, 262 F.3d at 117; *Eliya, Inc.*, 749 F. App'x at 46-47.  Here, Plaintiffs' alleged trade dress consists of the Miller Sandals Medallion based on the TT Logo at the center held together by three folded grommet straps -- which together Plaintiffs argue makes the Miller Sandals immediately identifiable as a Tory Burch product.  Defendant moves for summary judgment on functionality, secondary meaning and likelihood of confusion.  Plaintiffs move for summary judgment only on functionality.  Defendant's and Plaintiffs' summary judgment motions are both denied as to the trade dress claim.

### 1.    Functionality

Plaintiffs and Defendant cross-move for summary judgment on whether the Miller Sandals trade dress is functional.  "The functionality of a [design] can be demonstrated by, *inter alia*, showing that the mark has either traditional utilitarian functionality or aesthetic functionality."  *Christian Louboutin S.A.*, 696 F.3d at 217 (internal quotation marks omitted); *accord Sulzer Mixpac AG*, 988 F.3d at 182.  Trade dress is functional in a utilitarian sense "if it is (1) essential to the use or purpose of the article, or if it (2) affects the cost or quality of the article."  *Sulzer Mixpac AG*, 988 F.3d at 181 (internal quotation marks omitted).  An ornamental product feature is "aesthetically functional" if "trademark protection would significantly hinder

competition by limiting the range of adequate alternative designs." *Christian Louboutin S.A.*, 696 F.3d at 222; *accord Eliya, Inc.*, 749 F. App'x at 47.  In such cases, the aesthetic design of a product is "itself the mark for which protection is sought" and the Court considers whether "giving the markholder the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage." *Sulzer Mixpac AG*, 988 F.3d at 182.  There is a "statutory presumption that features are deemed functional until proven otherwise by the party seeking trade dress protection." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 30 (2001); *accord Eliya, Inc.*, 749 F. App'x at 47.  "The aesthetic functionality analysis is highly fact-specific" and must consider "both the [senior user's] right to enjoy the benefits of its effort to distinguish its product and the public's right to the vigorously competitive market protected by the Lanham Act." *Christian Louboutin S.A.*, 696 F.3d at 222 (cleaned up); *accord A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 479 (S.D.N.Y. 2017).

### a.     Defendant's Motion

To prevail on a trade dress claim, a plaintiff must show that the design is not functional. Defendant's motion for summary judgment is denied as to functionality because a reasonable jury could conclude that the Miller Sandals trade dress is not functional.  Defendant argues that the "prominent hardware piece," the "conspicuous stitch" of the Miller Sandals and the use of straps are functional because the Miller Sandals would fall apart without these features. Defendant also argues that the Miller Sandals' simple design combining grommets, folded straps and the Medallion is a cost saving mechanism that is functional.  These arguments based on utilitarian functionality are unpersuasive.

Here, the Miller Sandals trade dress does not consist of just any medallion held together by three straps.  The alleged trade dress is for thong sandals that combine the Miller Sandals

Medallion -- which resembles the TT Logo -- with three folded grommet straps.  Plaintiffs have put forward evidence, including from its shoe design expert, Mr. Holden, from which a reasonable jury could conclude that the Miller Sandals' design is not functional.  His report states, among other things, that "[t]here is nothing about a sandal, or a medallion sandal in particular, that requires the specific configuration of straps, attachments, and medallion design used in the Miller Sandal trade dress.  Any and all of these can be changed arbitrarily in order to create a new look without a sandal becoming unwearable."

Defendant's argument that the Miller Sandals are aesthetically functional is similarly unavailing.  Plaintiffs provide numerous examples of other alternative designs with prominent hardware pieces that exist in the market that do not use grommet straps.  *See Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 621 (2d Cir. 2008) (summary order) ("Although the design . . . does operate to perform a function, the trade dress is not 'functional' because there are many alternative designs that could perform the same function.").  Construing the evidence in light most favorable to Plaintiffs as the non-moving party, a reasonable juror could conclude based on the design and the expert testimony that the Miller Sandals' overall trade dress -- that is, the use of the Miller Sandals Medallion with three grommet straps -- is not functional.  Defendant's motion for summary judgment on whether the trade dress is functional is denied.

### b.    Plaintiffs' Motion

Plaintiffs' cross-motion on functionality is denied.  The Court declines to grant summary judgment on a single issue when Plaintiffs will need to prove, and the jury will need to resolve factual issues on, the remaining elements of Plaintiffs' trade dress claim.

### 2.      Distinctive Design and Secondary Meaning

Defendant's motion for summary judgment on the trade dress claim is denied for the additional reason that a question of fact exists as to secondary meaning.  For trade dress to be protected, the design must be "distinctive" and not "generic."  *Christian Louboutin S.A*, 696 F.3d at 216.  Trade dress for a product's design is distinctive, and therefore protectible, "only upon a showing of secondary meaning" in the public mind.  *Wal-Mart Stores, Inc.*, 529 U.S. at 205; *accord Capri Sun GmbH v. Am. Beverage Corp.*, No. 19 Civ. 1422, 2022 WL 976270, at *65 (S.D.N.Y. Mar. 31, 2022).  "A [design] has acquired 'secondary meaning' when, 'in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself.'"  *Christian Louboutin S.A*, 696 F.3d at 216 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 856 n.11 (1982)) (second alteration in original).  "Secondary meaning is a question of fact, with the burden of proof on the party claiming exclusive rights in the [mark]."  *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992); *accord Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 515 F. Supp. 3d 47, 61 (S.D.N.Y. 2021); *see also* 6 McCarthy on Trademarks & Unfair Competition § 32:119 (5th ed.).

The following six factors are relevant in determining whether a mark has acquired secondary meaning: "(1) advertising expenditures, (2) consumer studies linking the dress to the source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the dress, and (6) length and exclusivity of the [dress]'s use."  *L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co., Inc.*, 79 F.3d 258, 263 (2nd Cir. 1996) (cleaned up) (alteration in original); *accord Easy Spirit, LLC*, 515 F. Supp. 3d at 61.

Contrary to Defendant's assertions, a reasonable jury could find that the Miller Sandal trade dress has acquired secondary meaning.  Plaintiffs offer a plethora of evidence in favor of finding secondary meaning on all *Stickley* factors.  Tory Burch has spent hundreds of millions of dollars in extensive advertising, specifically for the Miller Sandals.  Consumer studies conducted by Dr. David Neal indicate that consumers strongly associate Miller Sandals with the Tory Burch Brand.  Extensive media coverage of the Miller Sandals identifies them as a Tory Burch brand product, and they have enjoyed huge commercial success measured by sales in North America. Plaintiffs also proffer evidence of efforts to copy their trade dress.  Since Plaintiffs' first sale of the Miller Sandals in 2008, Plaintiffs have engaged in a sustained effort to enforce their intellectual property.  Construing the evidence in the light most favorable to Plaintiffs, a reasonable jury could conclude that the Miller Sandal trade dress has acquired secondary meaning.  Defendant's motion for summary judgment on secondary meaning is denied.

### 3.    Likelihood of Confusion

Defendant also moves for summary judgment on the trade dress claim arguing no likelihood of confusion between the Miller Sandals trade dress and Olem Sandals trade dress. This issue also raises a question of fact precluding summary judgment.

To allege trade dress infringement, Plaintiffs must establish a likelihood of confusion between Plaintiffs' protected trade dress and Defendant's allegedly infringing product.  *See Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 86 (2d Cir. 2020); *Christian Louboutin S.A.*, 696 F.3d at 216.  The Second Circuit analyzes likelihood of confusion in trade dress cases based on the eight *Polaroid* factors:

> (1) strength of the plaintiff's trade dress; (2) similarity of the trade dresses; (3) proximity of the products in the marketplace; (4) likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the defendant sells its

product); (5) evidence of actual confusion; (6) the defendant's bad faith; (7) quality of the defendant's product; and (8) sophistication of the relevant consumer group.

*Nat. Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d Cir. 2005); *accord Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 273 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. 2017). The "evaluation of the Polaroid factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Tiffany & Co.*, 971 F.3d at 85 (internal quotation marks omitted).

Whether each *Polaroid* factor and the ultimate balancing of the factors favor one party are often legal determinations. *Id.* at 86 ("[I]n the majority of cases, we should review *de novo* both a district court's determinations as to each *Polaroid* factor and its ultimate balancing of those factors."). "As in any other area of law, then, if a factual inference must be drawn to arrive at a particular finding on a *Polaroid* factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment." *Id.* (cleaned up). Here, construing the evidence in favor of Plaintiffs, as the non-moving parties, a reasonable jury could conclude that there is likelihood of confusion.

### a.      Strength of the Trade Dress (Factor 1)

Construing the evidence in light favorable to Plaintiffs, a reasonable jury could conclude that the first factor favors Plaintiffs. The strength of the trade dress factor considers the same factors as whether the trade dress has secondary meaning. *Nora Beverages, Inc.*, 269 F.3d at 119; *see also Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995) ("A court's inquiry regarding the strength of a mark often parallels the inquiry concerning the mark's validity, inasmuch as the strength or distinctiveness of a mark determines both the ease with which it may be established as a valid trademark and the degree of protection it will be

accorded." (internal quotation marks omitted)); *accord Schutte Bagclosures Inc.*, 193 F. Supp. 3d. at 274-75.  As discussed above, Plaintiffs have submitted evidence that they invested significant effort into advertising and that consumer studies, press coverage and sales revenues confirm the strength of the trade dress.  A reasonable jury could find that the first factor favors Plaintiff.

        **b.**        **Similarity of the Trade Dress (Factor 2)**

A reasonable jury could conclude that the second factor also favors Plaintiffs, construing the evidence in their favor.  "In assessing similarity, courts look to the overall impression created by the [trade dress] and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers."  *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993); *accord Joules Ltd. v. Macy's Merch. Grp., Inc.*, 695 F. App'x 633, 638 (2d Cir. 2017).

Plaintiffs have proffered evidence from which a reasonable jury could conclude that the appearance of the Olem Sandals trade dress is similar to that of the Miller Sandals.  Both have prominent medallions held together by three straps.  The medallions are similar in their symmetric design and use of negative space.  Plaintiffs offer evidence of Defendant's customers referring to the Olem Sandals as a "Tory Burch style" shoe at point-of-sale.  When combined with the other elements of the alleged Miller Sandals trade dress, such as the three folded grommet straps, the overall design of the two sandals is sufficiently similar to cause confusion. Plaintiffs also proffer Mr. Poret's expert report and underlying survey analysis, which supports this conclusion.  A reasonable jury could credit this evidence and find that the second factor favors Plaintiffs.

### c.      Proximity of the Products (Factor 3)

A reasonable jury could find in favor of Plaintiffs on the third factor -- whether the two

products are in similar product markets.  Both products compete in the sandals market.  *See*

*Tiffany & Co.*, 971 F.3d at 85 n.6; *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d

867, 874 (2d Cir. 1986) (finding proximity of the products as "[b]oth products are jeans").

Defendant relies on the fact that the products are sold in different marketplaces with drastically

different retail prices.  The price point, however, is not dispositive of whether the two products

are in competitive proximity with each other.  *See Tiffany & Co.*, 971 F.3d at 85 n.6 (noting that

Costco's and Tiffany's diamond engagement rings are in competitive proximity); *Star Industries,*

*Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 387 (2d Cir. 2005) ("That Georgi vodka costs half as

much as Bacardi rum and is displayed on different shelves in the same store does not imply that

the products are not in competition.").  On balance, a reasonable jury could find market

proximity and that the third factor favors Plaintiffs.

### d.      Bridging the Gap (Factor 4)

The fourth factor pertains to whether Plaintiffs are likely to "bridge the gap" by

developing a product for sale in the defendant's market.  To the extent that the two products are

already in competitive proximity, as here, this factor is neutral.  *See Star Industries, Inc.*, 412

F.3d at 387 ("Because, as we have held above, Star's and appellees' products are already in

competitive proximity, there is really no gap to bridge, and this factor is irrelevant to

the *Polaroid* analysis in this case."); *1-800 Contacts, Inc. v. JAND, Inc.*, No. 21 Civ. 6966, 2022

WL 2316181, at *4 (S.D.N.Y. June 27, 2022).

### e.     Actual Confusion (Factor 5)

Plaintiffs have proffered sufficient evidence to create a triable fact on the issue of actual confusion.  Mr. Poret's consumer survey found that "net confusion rate of 25.3% attributable specifically and solely to the similarity of the combination of the center medallion, strap design, and grommet elements" between the two products.  Defendant argues that the survey is flawed, but this argument is unpersuasive because it goes to the weight to be given to Mr. Poret's report - - an issue for the jury.  A reasonable juror could find that the fifth factor favors Plaintiffs, construing the evidence in their favor.

### f.     Bad Faith (Factor 6)

A reasonable jury could find that Defendant acted in bad faith.  This factor, along with the quality of the products, is not "of high relevance to the issue of likelihood of confusion." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir. 2003).  Rather, "[a] finding that a party acted in bad faith can affect the court's choice of remedy or can tip the balance where questions are close." *Id.*  Nevertheless, "subjective issues such as good faith are singularly inappropriate for determination on summary judgment." *Tiffany & Co.*, 971 F.3d at 88 (internal quotation marks omitted).

Plaintiffs submit evidence that Defendant's own officers and employees intended to copy the Miller Sandal trade dress, referring to the Miller Sandals as an "original" in one instance. Plaintiffs also proffer evidence of Olem employees monitoring Tory Burch's boutiques, retailers and website and emailing each other images of the Miller Sandals.  Taken together, the evidence raises a genuine triable issue of fact regarding Defendant's intent.  Construing the evidence in light most favorable to Plaintiffs, a reasonable juror could find that the sixth factor favors Plaintiffs.

g.      **Quality of the Products (Factor 7)**

The seventh factor is the quality of the respective products.  As noted above, this factor

does not weigh heavily in the evaluation of consumer confusion.  This factor directs courts to

weigh "cross-cutting considerations."  *Capri Sun GmbH*, 2022 WL 976270, at *55; *see also*

*Morningside Grp. Ltd. v. Morningside Cap. Grp., LLC*, 182 F.3d 133, 142 (2d Cir. 1999).  On

the one hand, harm to "the senior user's reputation could be jeopardized by virtue of the fact that

the junior user's product is of inferior quality."  *Arrow Fastener Co.*, 59 F.3d at 384; *see also*

*Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 307 (S.D.N.Y. 2021).  On the

other, for purposes of likelihood of confusion, disparate qualities in products make it less likely

that consumers will confuse the products.  *Star Industries, Inc.*, 412 F.3d at 389; *Capri Sun*

*GmbH*, 2022 WL 976270, at *55.  The parties agree that there is likely no apparent difference in

quality at point-of-sale, especially when the products are sold through the internet.  This seems to

cut in favor of finding confusion.  Plaintiffs also offer evidence that once purchased, consumers

could conclude that the Olem Sandals are of poor quality.  For example, Mr. Holden, Plaintiffs'

expert witness, examined and deconstructed both sandals and found the Miller Sandals to be

more durable.  Construing the evidence in light most favorable to Plaintiffs, a reasonable juror

could find that the seventh factor favors Plaintiffs.

h.      **Buyers' Sophistication (Factor 8)**

The eighth factor is the buyers' sophistication.  This factor considers "the general

impression of the ordinary purchaser, buying under the normally prevalent conditions of the

market and giving the attention such purchasers usually give in buying that class of goods."  *Star*

*Industries, Inc.*, 412 F.3d at 390 (internal quotation marks omitted); *accord Stay You, LLC v.*

*H&M Hennes & Mauritz, LP*, No. 20 Civ. 1396, 2022 WL 2159824, at *6 (S.D.N.Y. June 15,

16

2022).  As an example, the "purchaser of a diamond ring, particularly of a wedding or engagement ring, will be most discriminating in his purchase, and make it carefully and deliberately."  *Tiffany & Co.*, 971 F.3d at 91 (internal quotation marks omitted).  "Consumer sophistication may be proved by direct evidence such as expert opinions or surveys.  In addition, in some cases a court is entitled to reach a conclusion about consumer sophistication based solely on the nature of the product or its price."  *Star Industries*, 412 F.3d at 390; *see also Patsy's v. Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 219 (2d Cir. 2003) (noting that consumer sophistication is generally low in dealing with cheaper products or products sold in the rough-and-tumble world of the supermarket).  Here, although the price point of the Miller Sandals could suggest buyer sophistication, the parties have not submitted any evidence on this issue.  Based on the record evidence, this factor is neutral.

### i.      Overall Likelihood of Confusion

"The evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins.  Rather, a court should focus on the ultimate question of whether consumers are likely to be confused."  *Tiffany & Co.*, 971 F.3d at 85 (internal quotation marks omitted).  Overall, based on the record evidence -- when considered in the aggregate and construed in favor of Plaintiff -- a reasonable jury could find a likelihood of consumer confusion based on six of the eight *Polaroid* factors -- particularly the strength of the Miller Sandals trade dress, the similarity of the trade dress and Mr. Poret's expert opinion of a strong likelihood of actual confusion -- with the remaining two factors being neutral.

Accordingly, because the record evidence is sufficient for a reasonable jury to find in favor of Plaintiffs on functionality, secondary meaning and likelihood of confusion (any one of

which would defeat summary judgment), Defendant's motion for summary judgment on the trade dress infringement claim is denied.

### B.     Trademark Infringement (Second Claim for Relief)

Defendant moves for summary judgment on Plaintiffs' trademark claim, arguing that the design used on the Olem Medallion is not likely to be confused with the TT Logo.  Because a reasonable jury could find for Plaintiff based on the record evidence, Defendant's motion for summary judgment on the trademark claim infringement claim is denied.

"Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion with [that] mark." *Tiffany & Co.*, 971 F.3d at 84 (internal quotation marks omitted).  The parties do not dispute that the TT Logo is a valid mark entitled to protection.

As with trade dress, likelihood of confusion is also analyzed applying the eight *Polaroid* factors.  *See Tiffany & Co.*, 971 F.3d at 86.  As stated above, a parallel analysis applies to trade dress and trademark cases.  *See Christian Louboutin*, 696 F.3d at 216 n.9.  Consequently, application of the *Polaroid* factors to assess the likelihood of confusion between the TT Logo and the design on the Olem Medallion as to some factors is the same as above -- bridging the gap, actual confusion, bad faith, quality of the products, buyers' sophistication -- and is not repeated below.  Because Plaintiffs' mark appears on many products, including significantly on shoes and sandals, including the Miller Sandals, and the point of comparison for the infringement claim is the TT Logo rather than the Miller Sandals trade dress, the analysis differs as to the remaining factors as follows:

### 1.    Strength of the Mark (Factor 1)

The first factor strongly favors Plaintiffs.  The strength of a trademark "is analyzed based on two components: (1) the degree to which [the mark] is inherently distinctive; and (2) the degree to which it is distinctive in the marketplace."  *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 329 (2d Cir. 2020) (internal quotation marks omitted) (alteration in original). Inherent distinctiveness is assessed using four categories of marks that indicate increasing distinctiveness and protectability: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful.  *See id.*; *Two Hands IP LLC*, 563 F. Supp. 3d at 302.  A descriptive mark is "one that tells something about a product, its qualities, ingredients or characteristics."  *Gruner + Jahr USA Publ'g*, 991 F.2d at 1076.  A suggestive mark suggests the product, though it may take imagination to grasp its nature.  *Id.*  An arbitrary mark has an actual dictionary meaning, but that meaning does not describe the product, and a fanciful mark is a made-up name.  *See id.* at 1075- 76.

Here, a reasonable jury could find that the TT Logo's mark is very strong.  The TT Logo has an "arbitrary" design in that that the Logo does not describe or make references to anything concrete.  Plaintiffs submit evidence that the TT Logo is "ubiquitous" and "instantly recogniza[ble];" that it is counterfeited worldwide and has been in Tory Burch's exclusive use for over seventeen years; and that Tory Burch has earned of billions of dollars from the sale of TT Logo branded products.  This factor favors Plaintiffs.

### 2.    Similarity of the Marks (Factor 2)

A reasonable jury could conclude that the TT Logo and the Olem Medallion are similar. "In assessing similarity, courts look to the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion

among prospective purchasers." *Gruner + Jahr USA Publ'g, a Div. of Gruner + Jahr Printing & Publ'g Co.*, 991 F.2d at 1078.  Here, both the TT Logo and the Olem Medallion make extensive use of negative space and symmetry, and the Olem Medallion creates a general impression similar to the TT Logo.  But the two are not identical.  Unlike the TT Logo, Defendant's medallion is "floral," does not contain the letter "T" and is both vertically and horizontally symmetrical.  (The TT Logo is only vertically symmetrical).  While these considerations create a question as to whether and to what extent Defendants' Olem Medallion is sufficiently similar to Plaintiffs' mark to create a likelihood of confusion, a reasonable jury could conclude that this factor weighs in favor of Plaintiffs.

### 3.      Proximity of the Products (Factor 3)

A reasonable jury could conclude that the third factor -- proximity of the products -- favors Plaintiffs.  *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996) (concluding that market proximity looks at "whether and to what extent the two products compete with each other," considering "the nature of the products themselves and the structure of the relevant market").  Although many products are sold with the TT Logo, shoes and sandals are significant among them.  The Olem Sandals compete in the same women's shoe market as Plaintiffs' products bearing the TT Logo.  While the parties' respective products have drastically different retail prices, as discussed above, a reasonable jury could find that the third factor favors Plaintiffs.

### 4.      Balancing

Construed in the light most favorable to Plaintiffs, six of the eight *Polaroid* factors favor Plaintiffs and the rest are neutral.  A reasonable jury could conclude from the evidence that the TT Logo has strong brand recognition, that the Olem Medallion is similar to Plaintiffs' TT Logo,

and that Defendant's sandals with the Olem Medallion compete in the same market as Plaintiffs' shoes and sandals bearing the TT Logo. The evidence is also sufficient to support a finding of actual confusion and bad faith, and that the quality of the products slightly favors Plaintiffs. On balance, the likelihood of confusion between the TT Logo and the Olem Medallion presents an issue of fact precluding summary judgement for Defendant on the trademark infringement claim.

Defendant argues that the TT Logo is not at issue because the Miller Sandals Medallion is not identical to the TT Logo. The TT Logo is used on the Miller Sandals only to label the shoes on the heel bed in conjunction with the word "TORY BURCH." Defendant is correct in that for Plaintiffs' trademark claim, the Olem Medallion should be compared to the TT Logo, not the Miller Sandals Medallion. In considering the *Polaroid* factors, the Court did compare the Olem Medallion to the TT Logo. Mr. Poret's report, whose survey attributed 18.6% of net confusion to the center medallion, also did not ask the participants to compare directly whether the Olem Medallion and the Miller Sandals Medallion are similar. The report simply surveyed whether the Olem Sandals, with or without the Olem Medallion, reminded them of any brand. Based on such evidence, a reasonable jury could conclude that a likelihood of confusion exists between the TT Logo and the Olem Medallion.

Defendant's reliance on the USPTO Examining Attorney's opinion on Olem's trademark application is misplaced. While the Examining Attorney stated that "no conflicting marks" were found in the USPTO database, the Examining Attorney also found that the Olem Medallion bore a merely ornamental, non-distinctive product design. The Examining Attorney was considering whether Defendant's design was entitled to trademark protection, a different inquiry from whether the design is confusingly similar to the TT Logo. *See Knowles-Carter v. Feyonce, Inc.*, 347 F. Supp. 3d 217, 225 n.3 (S.D.N.Y. 2018) ("While such refusals are entitled to substantial

weight in assessing likelihood of confusion for purposes of trademark infringement, they are 'not conclusive.'" (quoting *Syntex Lab'ys, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir. 1971)).

### C.    False Designation Under 15 U.S.C. § 1125(a) (Third Claim for Relief)

Defendant moves for summary judgment on Plaintiffs' third claim, relying mostly on technical aspects of the pleading, such as whether other portions of the complaint are incorporated.  Standards for false designation under § 1125(a) and trademark infringement under § 1114 are the same.  *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003); *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 871; *JTH Tax, Inc. v. Sawhney*, No. 19 Civ. 4035, 2020 WL 6825585, at *4 (S.D.N.Y. Nov. 20, 2020) ("[I]t is well settled that the standards for false designation of origin claims under [15 U.S.C. § 1125] are the same as for trademark infringement claims under [15 U.S.C. § 1114]." (cleaned up)).  Although the third cause of action is largely duplicative of the trade dress and trademark infringement claims, summary judgment is denied as the legal standards are the same.

### D.    State Law Claims (Fourth, Fifth and Sixth Claims for Relief) and Denial of Registration Claim (Seventh Claim for Relief)

Plaintiffs assert three state law claims: dilution and injury to business reputation, and common law claims for trademark infringement and unfair competition.  Defendant asks the Court to decline to exercise supplemental jurisdiction over these claims in the event Defendant is granted summary judgment on the federal claims.  As the federal trade dress and trademark claims survive, the Court continues to exercise supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).  Defendant's request in the alternative for dismissal on the merits for the reasons argued in relation to the trade dress and trademark claims, is denied for the reasons stated above denying Defendant summary judgment on those claims.

Defendant similarly seeks summary judgment on Plaintiffs' claim for an order requiring Defendant to abandon its related two trademark applications on the ground that the claim is moot because the USPTO issued a certificate for registration of the Olem Medallion.  As Plaintiffs did not address this argument in their reply, the claim is deemed abandoned and summary judgment is granted on this claim.

### E.   Counterclaim for Fraud

Plaintiffs move for summary judgment on Defendant's counterclaim for fraud based on allegedly false statements in Tory Burch's trademark applications.

As to the '795 Trademark, Defendant alleges that the TT Logo mark was not in use on February 1, 2004, as represented, because that day, which Plaintiffs claim was the opening date of the Manhattan store, was a Sunday.  Plaintiffs counter with a Declaration by the Tory Burch brand historian and a corroborating business record showing an opening date and goods in commerce using the TT Logo in February 2004.

As to the '326 Trademark, Defendant alleges that Plaintiffs did not use the TT Logo on a "full line of women's footwear" as early as February 1, 2004, or December 6, 2007, and that the application incorrectly included a specimen including a 2008 catalogue that contained the Miller Sandal, in effect, to mislead the PTO that the Miller Sandal was already for sale.  Plaintiffs argue that that particular specimen was submitted for a different purpose, and the trademark application was in any event approved based on the submission of other shoes bearing the TT Logo.

Defendant's arguments are rejected.  To cancel a trademark registration based on fraud, Defendant must show by "clear and convincing" evidence that Plaintiffs "knowingly ma[de] false, material representations of fact in connection with [their trademark] application."  *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016) (rejecting fraud claim when

alleging plaintiff's first use date was not until a year after the date claimed with the PTO). Defendant fails to provide evidence from which a reasonable jury could find a material misrepresentation or intent to defraud, and instead attempts to shift the burden of proof onto Plaintiffs. Plaintiffs' motion for summary judgment on the fraud counterclaim is granted.

### F.   Affirmative Defenses

Defendant's Answer to the Complaint lists eighteen affirmative defenses. Most are rejected in substance elsewhere in this opinion.[2] The remaining defenses are discussed below. They are: abandonment, estoppel, laches, unclean hands, lack of trade dress ownership, naked licensing and damages. Summary judgment can be granted on an affirmative defense when it is unsupported by any evidence in the record. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54-55 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *accord O'Neil v. Ratajkowski*, 563 F. Supp. 3d 112, 128 (S.D.N.Y. 2021). Defendant pleads most of the affirmative defenses as to both the trade dress and trademark infringement claim. The analysis below applies to both. Plaintiffs' motion for summary judgment on the affirmative defenses is granted.

### 1.   Abandonment

The abandonment defense fails. A mark is "abandoned" if its "use has been discontinued with intent not to resume such use," or if the owner's conduct "causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark." 15 U.S.C. § 1127. Here, Defendant offers no evidence of "non-use" by Tory Burch for either the Miller Sandals trade dress or the TT Logo, nor lack of intent to

---

[2]   These include, in substance, the failure to state a cause of action, the lack of subject matter jurisdiction, the functionality and common feature of the trade dress, the shifted burden of proof and the lack of notice, originality, secondary meaning, likelihood of confusion or fame relating to the trade dress.

resume use.  Defendant's argument rests on the fact that Tory Burch did not take actions against two other apparently infringing sandals.  Plaintiffs do not cite any authority holding that trademarks are considered abandoned unless the owner diligently litigates against every potential infringer.  Plaintiffs have litigated and otherwise enforced its trademark on other occasions and devoted significant resources to promoting and protecting their brand.  Viewing the evidence in light most favorable to Defendant, no reasonable jury could conclude that Plaintiffs have abandoned the Miller Sandals trade dress or the TTO Logo mark.

### 2.     Estoppel

Summary judgment is granted to Plaintiffs on Defendant's estoppel defense. The defense of equitable estoppel requires that defendants prove "(1) a misrepresentation by the plaintiff, (2) reasonable reliance by the defendant, and (3) prejudice." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004); *accord Gucci America, Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 244 n.264 (S.D.N.Y. 2012); *Amron v. Yardain Inc. Pension Plan*, No. 18 Civ. 11336, 2019 WL 6619107, at *7 (S.D.N.Y. Dec. 5, 2019).  In its opposition brief, Defendant contends that the estoppel defense applies because, in January of 2016, Plaintiffs were aware of existence of the Lily-13 and Lily-18 sandals and did not take any action against those sandals, which are also three-strap thong sandals with a medallion allegedly similar to the Miller Sandal Medallion.  These allegations do not give rise to a defense of equitable estoppel. Defendant proffers no evidence of misrepresentation, reliance or prejudice.

### 3.     Laches

Defendant withdrew its affirmative defense of laches in its opposition to Plaintiffs' motion for summary judgment on the affirmative defenses.  Consequently, the motion is denied as moot as to the laches defense.

### 4.  Unclean Hands

Summary judgment is granted to Plaintiffs on Defendant's unclean hands defense.

Unclean hands is an equitable defense that requires a party in a court of equity to come with

"clean hands."  *Leopard Marine & Trading, Ltd. v. Easy Street Ltd.*, 896 F.3d 174, 194 n.11 (2d

Cir. 2018) (citing *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir.

2000)).  Defendant argues that Plaintiffs' alleged fraud in obtaining trademark registration for the

TT Logo amounts to unclean hands.  For the same reasons supporting summary judgment on

Defendants' counterclaim for fraud, and because Defendant proffers no evidence of bad faith,

summary judgment is granted to Plaintiffs on this defense.

### 5.  Lack of Trade Dress Ownership and Prior Use

Defendant argues that Plaintiffs cannot assert a trade dress claim because they did not

"make first use of the marks and trade dress."  Defendant offers as an example the "Bernardo

Moolah sandal" from 2007, a third-party's product.  Summary judgment is granted on this

affirmative defense.  In order to assert the "prior use" defense, a defendant must show that it

used the trade dress or the trademark prior to the plaintiff's registration.  *See* 15 U.S.C. § 1115

(trademark); *Gucci America, Inc.*, 868 F. Supp. 2d at 245 (trademark and trade dress).  The TT

Logo was first registered as a mark in 2005.  Defendant's allegation is based on a third-party's

product from 2007.  There is no triable issue as to this defense, and summary judgment is

granted to Plaintiffs on this defense.

### 6.  Naked Licensing

Defendant's naked licensing affirmative defense fails.  Naked licensing occurs when a

holder of a mark enters into a licensing agreement and subsequently fails to "control" a licensing

program, including policing the quality of the products sold under the mark.  *See General Motors*

*Corp. v. Gibson Chemical & Oil Corp.*, 786 F.2d 105, 110 (2d Cir. 1986); *Can't Stop Productions., Inc. v. Sixuvus, Ltd.*, 295 F. Supp. 3d 381, 392-93 (S.D.N.Y. 2018). Defendant argues that naked licensing occurred because Tory Burch settled a different lawsuit against a third party after alleging in a complaint that they had created a knockoff brand and that the defendant was permitted to continue selling the allegedly infringing product. The assertion of continued sale is a supposition (which Defendant mistakenly calls an "inference" based on the absence of a settlement agreement) and is unsupported by evidence. Defendant points to nothing in the record to suggest a licensor-licensee relationship between Plaintiffs and that defendant. Summary judgment is granted to Plaintiffs on this defense.

### G.    Damages for Lost Profits

Defendant seeks a ruling that Plaintiffs are not entitled to damages for Plaintiffs' "lost profits" or "non-monetary damages" on the ground that there is no evidence to support either. The application is denied as moot. Plaintiffs represent that they are not seeking to recover their own lost profits, if any, but rather Defendant's "unjust enrichment."

### H.    Motion to Strike New Arguments

On March 25, 2022, Plaintiffs filed a motion to strike new arguments and evidence raised and attached to Defendant's reply memorandum of law. Whereas the motion to strike pertained to Defendant's summary judgment, which was denied, the motion to strike is denied as moot.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED on all claims, except GRANTED as to the Denial of Registration Claim (the Seventh Claim for Relief).

Plaintiffs' motion for summary judgment (1) on Defendant's affirmative defenses is GRANTED, except DENIED as moot as to the laches defense, which Defendant has withdrawn;

(2) on Defendant's counterclaim for fraud is GRANTED and (3) on non-functionality is

DENIED.  Plaintiffs' motion to strike Defendant's new arguments and for a conference thereon

are DENIED as moot.  Plaintiffs' motion for oral argument is DENIED as moot.

For clarity, the surviving claims are Plaintiffs' federal trade dress, trademark, false

designation claims and the three related state law claims.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 107, 120,

164, 217, 221, 222.

Dated: September 27, 2022
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE